**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

IN RE: GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO,　　　　　　　　　　　No. 1:18-md-02824-WJ
ON AUGUST 5, 2015

*This Document Relates to:*　　No. 17-cv-710-WJ-SCY

**MEMORANDUM OPINION AND ORDER
DENYING WESTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT TO
DISMISS THE *McDANIEL* PLAINTIFFS' CLAIMS FOR STIGMA DAMAGES**

　　　　The *McDaniel* Plaintiffs are 14 residents of Aztec, New Mexico, who own interests in properties adjacent to the Animas River in northern New Mexico and who allege they sustained personal injury and property damage as a result of the release from the Gold King Mine. *See* Second Amended Complaint at 2-3, Doc. 6, filed September 26, 2017, in *McDaniel v. United States*, No. 1:17-cv-00710-WJ-SCY.

　　　　Weston asks the Court to dismiss the *McDaniel* Plaintiffs' claims for diminution of property value due to environmental stigma. *See* Weston Solutions, Inc.'s Motion for Partial Summary Judgment to Dismiss the *McDaniel* Plaintiffs' Claims for Stigma Damages, Doc. 1490, filed March 7, 2022 ("Motion"); Environmental Restoration, LLC's Notice of Joinder, Doc. 1492, filed March 7, 2022; Federal Parties' Notice of Joinder, Doc. 1496, filed March 7, 2022. Weston states that "Stigma damages arise when a defendant creates a negative public perception which diminishes the value of a plaintiff's property." Motion at 10. "The *McDaniel* Plaintiffs retained ... a local real estate agent ... [who] opines that the Gold King Mine Spill would result in a diminution of value of each of the *McDaniel* Plaintiff properties on the order of 75-90% of the unimpaired value." Motion at 9, ¶ 17, 10.

　　　　Under Colorado state law:

> plaintiffs can recover post-repair stigma damages where real property was damaged and repairing the real property will not restore the lost value. *See, Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.,* 117 P.3d 60, 69 (Colo. App. 2004). However, Colorado has not addressed the issue of whether plaintiffs can recover stigma damages where there has been no physical damage to property. Therefore, the Court will look to other jurisdictions for guidance ... The Court is persuaded by the out-of-state authorities cited by Defendants and finds as a matter of law that stigma damages are not compensable without physical injury to real property.

*James L. Parks Elk Creek, LLC v. Wheeler*, 2020 WL 8994309 *1-*2 (D. Colo. 2020) (discussion of out-of-state authorities regarding stigma omitted).

The *McDaniel* Plaintiffs "retained Elvin Chavez, a President and owner of Sangre de Cristo Sciences, LLC, to testify at trial about the potentially increased levels of heavy metals identified from the water and soil sampling of the *McDaniel* Plaintiffs' properties." Motion at 4, ¶ 3. Mr. Chavez authored two reports regarding his sampling at the *McDaniel* Plaintiffs' properties. *See* Motion at 4, ¶ 5. Weston contends:

> the *McDaniel* Plaintiffs may not recover stigma damages because Mr. Chavez fails to establish that their properties sustained harm, damage, or injury as a result of the Gold King Mine Release. First, the Chavez Reports did not substantiate an increased presence of contaminants on the *McDaniel* Plaintiffs' properties due to the Gold King Mine release because the sample size was too small, and he did not establish a baseline to compare pre-release contaminant levels. *See* UMFs 3, 6, 15. The Chavez Reports did not consider other potential sources of contamination. *See* UMF 7. Chavez admits that he did not obtain a statistically accurate determination of the contamination of the Gold King Mine spill. *See* UMF 6. As a whole, the Chavez Reports are inconclusive as to whether any contamination, if any exists on the McDaniel Plaintiffs' properties, is attributable to the Gold King Mine release. *See* UMF 15. In addition, every sample collected and documented in the Chavez Reports fell within the acceptable ranges of MCLs[1] for USEPA's primary, enforceable standards. *See* UMFs 9-11, 13. Because the Chavez Reports did not establish any exceedances of USEPA's primary standards, the McDaniel Plaintiffs have not marshaled sufficient evidence to demonstrate harm to their real property. Lastly, the lack of continuity of sampling locations reveals that the Chavez Reports

---

[1] MCLs are "maximum contaminant levels" which are enforceable drinking water standards which have been "established to protect the public against consumption of drinking water contaminants that present a risk to human health. An MCL is the maximum allowable amount of a contaminant in drinking water." Doc. 1490-10 at 27.

2

fail to capture any potential patterns of contaminant migration on the McDaniel Plaintiffs' properties. *See* UMF 11(a), 12.

Motion at 12-13.

The *McDaniel* Plaintiffs do not dispute Weston's assertion that "every sample collected and documented in the Chavez Reports fell within the acceptable ranges of MCLs for USEPA's primary, enforceable standards" stating:

> While no samples taken directly from onsite drinking water exceeded binding MCLs, several of those samples did demonstrate elevated levels of metals subject to secondary standards[2] and river water directly adjacent to drinking water sources exhibited elevated levels of multiple heavy metals.

Response at 7, ¶ 10 (citations to record omitted).  The McDaniel Plaintiffs also cited to Mr. Chavez' deposition during which he testified: (i) "their groundwater wells were adjacent to the river, and their filters were being plugged by the orange sediment in it;" (ii) "the ground was still kind of orange on top;" (iii) "I saw the filters from some of these people's wells. And if the water flowed away from their property, these filters wouldn't have the sediments that was orange, the same that was in the riverbeds and in the water on them if it didn't impact them;" (iv) "I asked the question: How often do you change these filters? In a normal period, once a year.  They were replacing them every other day at this point."  Response 13, 70, 73, 77-78.  Some Plaintiffs have alleged that the water released from the Gold King Mine was "orange-brown."  *Allen* Plaintiffs' Second Amended Complaint at 110, ¶ 362, Doc. 445, filed January 21, 2020.

The Court denies Weston's Motion because it fails to show that Weston is entitled to judgment as a matter of law.

---

[2] Secondary MCLs are "nonmandatory water quality standards for 15 contaminants.  EPA does not enforce these secondary maximum contaminant levels.  They are established as guidelines to assist public water systems in managing their drinking water for aesthetic considerations, such as taste, color, and odor.  These contaminants are not considered to present a risk to human health at the secondary maximum contaminant level." Doc. 1490-10 at 27.

> The party moving for summary judgment bears the initial burden of showing an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where, as here, the burden of persuasion at trial would be on the nonmoving party, the movant may carry its initial burden by providing "affirmative evidence that negates an essential element of the nonmoving party's claim" or by "demonstrat[ing] to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* at 331, 106 S.Ct. 2548.
>
> If the movant makes this showing, the burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmovant "fails to make a showing sufficient to establish the existence of an element," the Federal Rules of Civil Procedure "mandate[ ] the entry of summary judgment." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

*Tesone v. Empire Marketing Strategies*, 942 F.3d 979, 994 (10th Cir. 2019).

Weston's Motion is based in large part on drinking water samples taken in 2016 approximately one-half year after the August 5, 2015, release from the Gold King Mine. *See* Motion at 4, ¶ 5 (referring to "February 2016 Quarterly Sampling Event" and "Special Spring Runoff Report for April/May 2016 Sampling Event"). Weston argues that because none of the samples contained contaminants above the EPA MCLs, there is no evidence that Plaintiffs' properties were harmed. The sample results cited by Weston do not negate the *McDaniel* Plaintiffs' claims that they sustained personal injury and property damage due to the Gold King Mine release because those sample results show only that the drinking water did not exceed MCLs in 2016. Weston has not shown that those sample results represent the drinking water quality from August 2015 through January 2016, and, consequently, has not shown that contaminants from the release did not impact the *McDaniel* Plaintiffs' drinking water shortly after the release.

The *McDaniel* Plaintiffs have shown that there is a genuine issue of material fact as to whether they sustained property damage as a result of the release from the Gold King Mine. The *McDaniel* Plaintiffs have cited evidence, the orange sediment clogging their groundwater well

4

filters, indicating that contaminants from the Gold King Mine release may have entered their drinking water. The fact that the drinking water samples from 2016 do not contain contaminants exceeding MCLs does not preclude the *McDaniel* Plaintiffs from asserting claims for diminution of property value due to environmental stigma because Colorado law allows for stigma damages for temporary harms to property. *See Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60, 69 (Colo. App. 2004) ("Damages recoverable for injury to property that has been remediated include repair costs and post-repair diminution in value, if any").

**IT IS ORDERED** that Weston Solutions, Inc.'s Motion for Partial Summary Judgment to Dismiss the *McDaniel* Plaintiffs' Claims for Stigma Damages, Doc. 1490, filed March 7, 2022, is **DENIED.**

_____
**WILLIAM P. JOHNSON**
**CHIEF UNITED STATES DISTRICT JUDGE**