**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

IN RE: GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO,           No. 1:18-md-02824-WJ
ON AUGUST 5, 2015

*This Document Relates to:*     No. 18-cv-744-WJ-KK
                            No. 17-cv-710-WJ-SCY

**MEMORANDUM OPINION AND ORDER
GRANTING WESTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT
TO DISMISS CERTAIN TRESPASS CLAIMS**

Weston Solutions, Inc. ("Weston"), Environmental Restoration, LLC ("ER"), and the Federal Parties seek to dismiss the trespass claims those *Allen* Plaintiffs and *McDaniel* Plaintiffs who do not own land that adjoins the Animas River or the San Juan River. *See* Weston Solutions, Inc.'s Motion for Partial Summary Judgment to Dismiss Certain Trespass Claims, Doc. 1474, filed March 7, 2022 ("Motion"); ER's Notice of Joinder, Doc. 1481, filed March 7, 2022; Federal Parties Notice of Joinder, Doc. 1494, filed March 7, 2022.

Regarding the Allen Plaintiffs' claims, the Tenth Circuit Court of Appeals recently entered its Opinion holding that "a district court must apply the point source state's statute of limitations to state law claims preserved under the [Clean Water Act]" and remanding the matter to the Court for proceedings not inconsistent with the Tenth Circuit's Opinion. *See Allen v. Environmental Restoration*, No. 19-2197 (10th Cir. May 3, 2022). Under the Tenth Circuit's holding, the tort claims of the Allen Plaintiffs are barred by the State of Colorado's statute of limitations. The Tenth Circuit has not yet entered its Mandate. The Court finds no reason to delay entry of this Order until the Tenth Circuit enters its Mandate and further proceedings in this Court regarding the Tenth Circuit's opinion because this Order rules on some of claims of some of the *McDaniel* Plaintiffs

who have a settlement conference with Weston, ER and the Federal Parties set for July 22, 2022.

*See* Amended Order Scheduling Settlement Conferences, Doc. 1645, filed May 15, 2022.

Weston "moves for summary judgment on the trespass claims stated against it by those individual plaintiffs who do not own land that adjoins the Animas River or the San Juan River ("Non-riparian Plaintiffs"). Motion at 2. Pursuant to Colorado law:

> The elements for the tort of trespass are a physical intrusion upon the property of another without the proper permission from the person legally entitled to possession of that property. The intrusion can occur when an actor intentionally enters land possessed by someone else, or when an actor causes something else to enter the land. For instance, an actor, without himself entering the land, may invade another's interest in its exclusive possession by ... placing a thing either on or beneath the surface of the land.

*Hoery v. United States*, 64 P.3d 214, 217 (Colo. 2003) (*en banc*) (citations and quotation marks omitted). "[I]n Colorado, an intangible intrusion may give rise to claim for trespass, but only if an aggrieved party is able to prove physical damage to the property caused by such intangible intrusion." *Pub. Serv. Co. of Colo. v. Van Wyk*, 27 P.3d 377, 387, 390 (Colo. 2001) ("The meaning of the term "intangible" is something that is impalpable, or incapable of being felt by touch").

Weston contends:

> [The Non-riparian Plaintiffs] cannot show that Weston caused any heavy metals to enter upon their lands. The Non-riparian Plaintiffs' trespass to land claims rely on the Colorado test for common-law civil trespass to contend that Weston caused or contributed to the invasion or intrusion upon the Non-riparian Plaintiffs' property rights without permission. To have a legal remedy for trespass to land, however, the Non-riparian Plaintiffs must prove that Weston caused a physical intrusion of a substance onto their property. The Non-riparian Plaintiffs have offered no evidence to support such a contention of physical intrusion. In addition, no further evidence will be entered in this case now that discovery has closed. Because the Non-riparian Plaintiffs cannot prove the entry element of trespass to land, the claim must be dismissed as to each plaintiff as a matter of law and this Court should allow no new claims from prospective claimants who do not possess riparian lands that adjoin the affected rivers.

Motion at 2. Weston sets forth the following material facts:

1.      Water impounded within the Gold King Mine was released on August 5, 2015.

2.      The following [*McDaniel* and *Allen* bellwether] plaintiffs do not possess land that adjoins the Animas River or San Juan River and are, therefore, Non-riparian Plaintiffs: [listing 21 Plaintiffs].

3.      On August 6, 2015, the Navajo Nation closed the inlet structures to the canal system, diverting water back into the San Juan River before it could reach lands served by irrigation canals.

4.      The Gold King Mine plume did not reach the laterals of canal system on the Navajo Nation.

5.      Likewise, the Aztec Ditch, which serves irrigation water to the Emerson Property, was closed prior to the arrival of the plume, and the Emersons did not use water for two weeks after the ditch reopened.

6.      None of the bellwether *Allen* Plaintiffs adduced evidence of testing on their properties to determine whether contaminants from the Gold King Mine spill entered into or persist in the soil or water.

7.      A retained expert for the *McDaniel* Plaintiffs, Elvin Chavez, performed groundwater and soil testing on the Emerson property as well as the other *McDaniel* Plaintiff properties.  That testing did not show any exceedances of applicable contaminant thresholds.  Mr. Chavez sampled only once, after the release, so there is no baseline data to determine whether the heavy metal concentrations that he identified were higher than before the release.  Mr. Chavez also did not attempt to analyze the source of the metals.

Motion at 3-4 (citations to the record omitted).

The *Allen* Plaintiffs filed a Response opposing Weston's Motion stating they "take no position [regarding Weston's facts Nos. 5 and 7] as this fact is specific to the *McDaniel* Plaintiffs only." *See* Doc. 1539 at 10, filed April 4, 2022.  The *McDaniel* Plaintiffs filed a Notice of Joinder in and adoption by reference of the *Allen* Plaintiffs' Response but did not dispute Weston's facts Nos. 5 and 7.  *See* Doc. 1546, filed April 4, 2022.

The *Allen* Plaintiffs dispute Weston's fact No. 2, which identifies certain Plaintiffs as "Non-riparian Plaintiffs" because they do not possess land that adjoins the Animas River or the San Juan

River, stating that those Plaintiffs either irrigated their property using irrigation ditches that carry water from the San Juan River onto their property or hauled water from the San Juan River to their property.  The *Allen* Plaintiffs' dispute of Weston's fact No. 2 does not show a genuine issue of material fact.  Weston's fact No. 2 merely identifies the Plaintiffs who are the subject of Weston's Motion.  The *Allen* Plaintiffs also state that Weston's fact No. 2 is "immaterial."  Response at 5.

The *Allen* Plaintiffs dispute Weston's fact No. 3, which states the Navajo Nation closed the inlet structures to the canal system, diverting water back into the San Juan River before it could reach lands served by irrigation canals, by stating: "Several irrigation ditches did not have headgates allowing them to be shut off.  Further, several irrigation ditches had headgates which were rusted in the open position and incapable of being shut off."  Response at 9 (citing to the testimony of D. McQuillan).  The cited portions of the record do not show that any of the ditches without headgates or with headgates which were rusted open served the Plaintiffs who are the subject of Weston's Motion.

The *Allen* Plaintiffs dispute Weston's fact No. 4, which states the Gold King Mine plume did not reach the laterals of canal system on the Navajo Nation.  The *Allen* Plaintiffs state:

> After the plume passed through the Navajo Nation, irrigation canals were re[open]ed such that San Juan River water was available to use on Plaintiffs' farmland and to water their livestock. In addition, the plume, or the time that the plume was present or visible on the Navajo Nation, is not the only potential source of contamination. Plaintiffs' expert witnesses testified that the Gold King Mine blowout caused water quality violations under the applicable standards in 2015 and that resuspended heavy metal concentrations caused violations in 2016 and 2019. Weston's own expert, Dr. Shields agreed that the exceedances in 2015 and 2016 were a direct result of the blowout and that exceedances in 2019 and any future exceedances could be attributed to heavy metals from the Blowout. This testimony establishes that heavy metal concentrations are still deposited in the beds of the San Juan and Animas Rivers and that the concentrations are subject to resuspension. As a result, there is a genuine issue of material fact as to whether the resuspended concentrations entered Plaintiffs' irrigation canals and land.

Response at 9 (citations to the record omitted).  The cited portions of the record do not indicate where the exceedances occurred in the San Juan River relative to where the water is diverted from the San Juan River to the irrigation canals or whether any of the Plaintiffs were irrigating during those exceedances.

The *Allen* Plaintiffs dispute Weston's fact No. 6 which states none of the bellwether *Allen* Plaintiffs adduced evidence of testing on their properties to determine whether contaminants from the Gold King Mine spill entered into or persist in the soil or water.  The *Allen* Plaintiffs state:

> Although it is true that the *Allen* Plaintiffs did not test their soil or water, they dispute that such testing is only way to establish that contaminants entered their land as a result of the Gold King Mine Spill. From the evidence outlined in DMF 4, supra, a reasonable jury could determine that trespass occurred. At a minimum, such evidence creates genuine issues of material fact.

Response at 9.

The Court grants Weston's Motion for summary judgment:

> "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "There is a genuine issue of material fact if a rational jury could find in favor of the nonmoving party on the evidence presented." *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 882 (10th Cir. 2018) (quotations omitted).

> "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact ...." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The movant may carry this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

> When applying this standard, courts "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

*In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1270-71 (10th Cir. 2019); *Valdez v. United Food & Commercial Workers Union Local 7*, 122 Fed.Appx. 443, 445 (10th Cir. 2005) ("The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is genuine; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant").

.      Weston met its initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact by citing to portions of the record showing that the Gold King Mine plume did not reach the laterals of the irrigation canal system on the Navajo Nation and that the ditch serving the Emersons was closed prior to arrival of the plume.  Weston also pointed out that there is an absence of evidence of testing on the *Allen* Plaintiffs' properties to determine whether contaminants from the Gold King Mine spill entered into or persist in the soil or water.  The *McDaniel* Plaintiffs did not dispute Weston's facts that (i) the Aztec Ditch, which serves irrigation water to the Emerson Property, was closed prior to the arrival of the plume, and the Emersons did not use water for two weeks after the ditch reopened; (ii) testing did not show any exceedances of applicable contaminant thresholds; (iii)  the *McDaniel* Plaintiffs' expert sampled only once, after the release, so there is no baseline data to determine whether the heavy metal concentrations that he identified were higher than before the release; and (iv)  the *McDaniel* Plaintiffs' expert also did not attempt to analyze the source of the metals.

Plaintiffs have cited to portions of the record to show that some headgates could not be closed when the main plume passed but have not cited to portions of the record showing those headgates were located on irrigation canals that served their properties and allowed water from the river to enter their properties when the main plume passed.  Plaintiff have also cited to parts of the record that indicate some portions of the San Juan River exceeded standards three times after the

main plume passed, but they have not cited to any portions of the record showing that the contaminated water in San Juan River flowed through the irrigation canals to the Non-Riparian Plaintiffs' properties and damaged Non-Riparian Plaintiffs' properties.

**IT IS ORDERED** that Weston Solutions, Inc.'s Motion for Partial Summary Judgment to Dismiss Certain Trespass Claims, Doc. 1474, filed March 7, 2022, is **GRANTED.**

**WILLIAM P. JOHNSON**
**CHIEF UNITED STATES DISTRICT JUDGE**