## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

IN RE: GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO,                                      No. 1:18-md-02824-WJ
ON AUGUST 5, 2015

*This Document Relates to:*   No. 17-cv-710-WJ-SCY
                              No. 18-cv-744-WJ-KK

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART WESTON SOLUTIONS, INC.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT TO DISMISS THE BELLWETHER *ALLEN* PLAINTIFFS'
AND *McDANIEL* PLAINTIFFS' CLAIMS FOR NONECONOMIC DAMAGES**

Weston moves for partial summary judgment on all claims for noneconomic damages asserted by the bellwether *Allen* Plaintiffs and the *McDaniel* Plaintiffs. *See* Motion for Partial Summary Judgment to Dismiss the *Allen* Plaintiffs' and *McDaniel* Plaintiffs' Claims for Noneconomic Damages at 3, Doc. 1475, filed March 7, 2022 ("Motion"). Environmental Restoration and the Federal Parties joined in Weston's Motion. *See* Doc. 1482, filed March 7, 2022; Doc. 1495, filed March 7, 2022.

Special Master Hon. Alan C. Torgerson used a hybrid bellwether selection approach to select a discovery pool so that depositions may be taken in a timely, efficient, and effective manner stating:

> Bellwether plaintiffs are often used in mass tort multi-district litigation ... In this case, there are approximately 301 *Allen* Plaintiffs and 15 *McDaniel* Plaintiffs ... The primary goal in any bellwether selection process is to employ a method of selection for both discovery and bellwether trials that provides meaningful information that is regarded by both sides as representative and that can be extrapolated to the plaintiff group as a whole. The purpose of any bellwether process is to allow the parties to reach a settlement of the individual plaintiffs' claims.

Order at 1-2, Doc. 475, filed February 26, 2020.

There are two categories of noneconomic damages which are discussed below: (i) damages for annoyance and discomfort; and (ii) damages for emotional distress. Before the selection and depositions of the bellwether Plaintiffs, the Court, in a ruling on a motion to dismiss, struck the *Allen* Plaintiffs' claims for emotional distress and deferred ruling on whether the *Allen* Plaintiffs claims for annoyance and discomfort can proceed. *See* Doc. 182 at 8, filed May 31, 2019 (noting that Colorado law distinguishes emotional distress damages from damages for annoyance and discomfort). The *Allen* Plaintiffs later filed a notice clarifying the scope of their personal injury claims stating they claim damages for "loss of enjoyment, annoyance, discomfort, and inconvenience" and for "the intangible, subjective, noneconomic losses, including the loss of peace of mind based on their fear that contaminants could be present in their food, their fields and the perceived stigma attached to their crops, food and land." Doc. 954, filed December 7, 2020.

**Colorado Law Regarding Non-Economic Damages**

Under Colorado law:

The goal of tort damages is to compensate the injured landowner "for any and all losses that result from the conduct for which the defendant is liable, including the loss of the use of the property, if any, and any separate injuries in the nature of discomfort, annoyance or physical illness." *Board of Cnty. Comm'rs v. Slovek,* 723 P.2d 1309, 1318 (Colo.1986). The *Slovek* court explained that the subjective "use value" of the property to the owner or occupant may be a distinct and separate component of the property damage. *Id.* "An owner should be allowed to recover for any interference with or loss of this 'use value' that results from another's tortious action if that loss can be satisfactorily demonstrated in concrete terms." *Id.* If "reasonable and competent evidence" is presented about "personal injury to the landowner in the form of discomfort and annoyance, [including] sickness," compensation should be awarded. *Id.* (citing Restatement (Second) of Torts § 929 cmt. e (1979)).
....

After *Webster,* a division of this court clarified that the *Slovek* principles apply to *any* tort action "involving damages for injury to real property" where "the fact finder is required to determine, as nearly as possible, the actual loss suffered by the property owner." *Hawley v. Mowatt,* 160 P.3d 421, 424 (Colo.App.2007).

*Hendricks v. Allied Waste Transp.*, Inc., 282 P.3d 520, 524-525 (Colo. App. 2012) (emphasis in original).

> Damages available on trespass and nuisance claims can include not only diminution of market value or costs of restoration and loss of use of the property, but also discomfort and annoyance to the property owner as the occupant. *Board of County Commissioners v. Slovek,* 723 P.2d 1309 (Colo.1986); *Burt v. Beautiful Savior Lutheran Church,* 809 P.2d 1064 (Colo.App.1990).
>
> We recognize that annoyance and discomfort by their very nature include a mental or emotional component, and that some dictionary definitions of these terms include the concept of distress. Nevertheless, the "annoyance and discomfort" for which damages may be recovered on nuisance and trespass claims generally refers to distress arising out of physical discomfort, irritation, or inconvenience caused by odors, pests, noise, and the like. *See Staley v. Sagel,* 841 P.2d 379 (Colo.App.1992) (affirming damages on nuisance claim based on effects of dust, smell, and waste disposal from neighboring hog farm); *Burt v. Beautiful Savior Lutheran Church, supra* (damages on trespass claim included loss of use of basement and discomfort and annoyance caused by smell in the home following water damage); *Miller v. Carnation Co.,* 39 Colo.App. 1, 564 P.2d 127 (1977) (damages for annoyance and discomfort caused by flies and rodents from neighboring poultry ranch); *see also Krebs v. Hermann,* 90 Colo. 61, 6 P.2d 907 (1931) (plaintiff entitled to injunction on nuisance claim against kennel where offensive odors and barking dogs deprived him and his family of sleep).
>
> Our cases have permitted recovery for annoyance and discomfort damages on nuisance and trespass claims while at the same time precluding recovery for "pure" emotional distress. *See Slovek v. Board of County Commissioners,* 697 P.2d 781 (Colo.App.1984) (holding that damages for annoyance and discomfort were available on trespass claim, but that recovery for emotional distress was not available where there was no allegation of negligent infliction of emotional distress or outrageous conduct), *aff'd,* 723 P.2d 1309 (Colo.1986); *Calvaresi v. National Development Co.,* 772 P.2d 640 (Colo.App.1988) (in action for tortious injury to land, plaintiffs were entitled to put on evidence to establish discomfort, annoyance, physical illness, and loss of use and enjoyment of property, but were not entitled to recover damages for emotional distress).
>
> Courts in other jurisdictions have held that the general rule barring recovery for emotional distress without accompanying physical injury applies to nuisance and trespass claims. *See Maddy v. Vulcan Materials Co.,* 737 F.Supp. 1528 (D.Kan.1990) (no recovery for emotional distress on trespass and nuisance claims); *Coddington v. Staab,* 716 So.2d 850 (Fla.App.1998) (damages for emotional or mental harm were outside the scope of damages for trespass); *see also Boughton v. Cotter Corp.,* 65 F.3d 823 (10th Cir.1995) (under Colorado law, unfounded fears

3

>of cancer were not compensable as annoyance and discomfort damages on nuisance and trespass claims).
>....
>
>we conclude that plaintiffs' testimony regarding their emotional distress should not have been admitted.

*Webster v. Boone*, 992 P.2d 1183, 1185-1187 (Colo. App. 1999); *Hawley v. Mowatt*, 160 P.3d 421, 426 (Colo. App. 2007) (annoyance and discomfort damages generally do not include recovery for "pure" emotional distress annoyance and discomfort damages generally do not include recovery for "pure" emotional distress).

**Summary Judgment**

>"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "There is a genuine issue of material fact if a rational jury could find in favor of the nonmoving party on the evidence presented." *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 882 (10th Cir. 2018) (quotations omitted).
>
>"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact ...." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The movant may carry this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.
>
>When applying this standard, courts "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

*In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1270-71 (10th Cir. 2019); *Valdez v. United Food & Commercial Workers Union Local 7*, 122 Fed.Appx. 443, 445 (10th Cir. 2005) ("The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create

a dispute of fact that is genuine; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant").

**Plaintiffs' Claims for Non-Economic Damages**

Plaintiffs' claims for noneconomic damages include claims for emotional distress. Weston cites several depositions of the bellwether *Allen* Plaintiffs and the *McDaniel* Plaintiffs where Plaintiffs state the Gold King Mine Release caused them to: (i) become depressed; (ii) worry; (iii) be scared of the water; (iv) not trust the water; (v) become stressed; (vi) suffer mentally and spiritually; (vii) worry about getting cancer; and (viii) become sad. *See* Motion at 5-12. Some of the Plaintiffs cried because the Release contaminated the river. *See id.*

Plaintiffs' claims for noneconomic damages also include claims for annoyance and discomfort. The *Allen* Plaintiffs cite several depositions of the bellwether *Allen* Plaintiffs where Plaintiffs state the Gold King Mine Release caused them to: (i) haul water for livestock and crop irrigation; (ii) limit their consumption of water; (iii) sell their livestock; (iv) be unable to grow crops for religious ceremonies; and (v) purchase food instead of relying on the crops they grew. *See Allen* Plaintiffs' Response at 10-24, Doc. 1552, filed April 8, 2022. Some of the *Allen* Plaintiffs stated that the Release interfered with their hobbies and religious activities. *See id.*

The *Allen* Plaintiffs took no position on Weston's facts regarding claims by the *McDaniel* Plaintiffs. The *McDaniel* Plaintiffs joined in the Allen Plaintiffs' Response stating:

> The McDaniel Plaintiffs do not dispute the raw facts ## 31-37 that were cherry picked from the McDaniel Plaintiffs' depositions. However, none of the cited facts prevent the McDaniel Plaintiffs from an award of non-economic damages, which as more fully described in the response joined hereto, are not dependent on physical injury or mental health counseling, Defendant's attempt at mischaracterizing those damages notwithstanding.

Doc. 1586, filed April 20, 2022.

Emotional Distress Damages

The Court grants Weston's Motion for summary judgment on the bellwether *Allen* Plaintiffs and McDaniel Plaintiffs' claims that seek compensation for emotional distress. *See Webster v. Boone*, 992 P.2D 1183, 1185-1186 (Colo. App. 1999) ("Our cases have permitted recovery for annoyance and discomfort damages on nuisance and trespass claims while at the same time precluding recovery for "pure" emotional distress").

Annoyance and Discomfort Damages

The Court denies Weston's Motion for summary judgment to the extent it seeks dismissal of annoyance and discomfort damages asserted by the bellwether *Allen* Plaintiffs and McDaniel Plaintiffs. *See* Motion at 3 (stating Weston "moves for partial summary judgment on all claims for noneconomic damages asserted by the group of bellwether *Allen* Plaintiffs and McDaniel Plaintiffs"). Several of the bellwether *Allen* Plaintiffs testified that they suffered annoyance and discomfort due to the Release, such as hauling water for livestock, irrigation and domestic use, and interference with hobbies and religious activities.

Weston argues that the "individual plaintiffs' claimed non-economic damages are not recoverable because they do not arise from any *physical* interference with their use of property." Motion at 18-19 (emphasis in original) (citing cases where there was physical damage to the property). Under Colorado law, an individual can recover damages for the annoyance and discomfort arising out of physical discomfort, irritation or inconvenience without physical injury to their property. *See Webster v. Boone*, 992 P.2d at 1185-86 ("the annoyance and discomfort for which damages may be recovered on nuisance and trespass claims generally refers to distress arising out of physical discomfort, irritation or inconvenience caused by odors, pests, noise, and the like") (citing cases where odors, flies and rodents, or barking dogs on neighboring properties caused discomfort and distress); *see also Hendricks v. Allied Waste Transp.*, Inc., 282 P.3d at 524-

6

525 ("[a]n owner should be allowed to recover for *any* interference with or loss of this 'use value' that results from another's tortious action if that loss can be satisfactorily demonstrated in concrete terms") (emphasis added).  The Court will allow Plaintiffs' annoyance and discomfort claims to proceed because Plaintiffs have alleged that tortious actions at the Gold King Mine interfered with Plaintiffs' use and enjoyment of their properties by preventing them from using San Juan River water for irrigation and livestock purposes.

<u>Time Limit on Annoyance and Discomfort Claims</u>

The Court denies Weston's request that non-economic damages for loss of use of property be confined to the 2015 growing season.  *See* Motion at 16-20.   Weston set forth the following facts:

> 2. On August 15, 2015, the State of New Mexico lifted its restrictions on use of the San Juan River other than a recommendation to "catch and release" fish caught in the stream. The "catch and release" restriction was lifted on September 4, 2015. *See* Ex.1, The State of New Mexico's Objections and Responses to Federal Parties' First Set of Requests for Admission to New Mexico, Requests for Admission 54-55.
> ....
>
> 4. By October 22, 2015, the Navajo Nation "determined that, based on the information currently available to it as well as assurances from the U.S. EPA, the San Juan River is now safe to use for both irrigation and livestock purposes." At that time, the Navajo Nation lifted agricultural use restrictions for the remaining chapters. *See* Ex. 3, Dep. Ex. Becker – 466.

Motion at 4.  Weston argues:

> The individual plaintiffs' claimed non-economic damages are not recoverable because they do not arise from any *physical* interference with their use of property. Whatever loss of or interference with the use of property, if any, that the individual plaintiffs suffered due to the spill was limited in duration. The restrictions on use of the San Juan River for irrigation, livestock watering, and other purposes were lifted for all individual plaintiffs by the beginning of the 2016 irrigation season, if not sooner. UMFs 1-4. Any longer interference with use was not due to any lingering *physical* impediment. Rather, any continuing disuse of plaintiffs' property was due to plaintiffs' personal choice to delay resumption of their use of the San Juan River due to subjective apprehension or worry about potential continuing effects of the spill....

> Ultimately, the individual plaintiffs seek compensation for their emotional trauma, feelings of loss, and worry following the spill. These damages are unrelated to any loss of use of their properties due to the Gold King Mine spill and relate instead entirely to their subjective reaction to the spill. Colorado tort law affords no recovery in this situation. The noneconomic damages must be dismissed.

Motion at 19-20.

Plaintiffs argue that their annoyance and discomfort continued after the water use restrictions were lifted in 2015:

> There are also ample disputed material facts showing that the physical interference to Plaintiffs' property lasted well beyond the time the use restrictions were lifted, including the fact that many Plaintiffs did not resume irrigating their property multiple years after the Gold King Mine blowout ("Blowout") (and some still do not irrigate due to fear of contamination or inability to restore their farming operations due to lack of income).
> ....
> These cases establish that Plaintiffs are permitted to recover noneconomic damages for as long as the jury finds that they lost use of their property and experienced annoyance and discomfort. Further, Plaintiffs' testimony demonstrates that their noneconomic damages continued well beyond the dates the use restrictions were lifted and even continue to present day. *See* DMFs 6-30. "The rule is well settled that one may not recover damages for an injury which he might by reasonable precautions or exertions have avoided. What constitutes a 'reasonable' precaution is for the trier of fact to determine upon the evidence." *Valley Dev. Co. v. Weeks*, 364 P.2d 730, 733 (Colo. 1961) (en banc) (internal quotation marks and citation omitted). Thus, the extent of "reasonable" precaution is a disputed question of fact for the jury to determine, not a question of law that can properly be addressed through summary judgment based on the dates of various government restrictions. Weston's labeling of Plaintiffs' decisions [to] not use water as nothing more than "personal choice," Motion at 17-18, is overly simplistic and improperly infers that their decisions were not reasonable. *See Anderson*, 477 U.S. at 255 (inferences at this stage all inferences must be drawn in Plaintiffs' favor). Weston's characterization also ignores or minimizes the unique and intimate relationship Plaintiffs have with the River. Plaintiffs explained their personal relationship with the river and testified that they were afraid to consume the crops or feed their family and friends the crops because they worried the food was poisoned. *See* DMFs 6-30. It is undisputed that Plaintiffs' access to water was disrupted due to the Blowout and the question about the appropriate temporal scope of the resulting annoyance and disturbance damages is one for a jury. *See Valley*, 364 P.2d at 733.

Response at 33-35. Plaintiffs state "there are disputed material facts regarding the continuing trespass and nuisance and the long-term health effects from the Blowout" and "incorporate by reference Plaintiffs' Response to Weston' Trespass Motion (*see* Dkt. 1539 at 7-8, DMF 4, 6, filed 04/04/22) and

8

the Navajo Nation's Response to the NN Torts Motion (*see* Dkt. 1549 at 3-7, DMF 2, filed 04/04/22) that outlines in detail the ongoing harm to the water quality of the River and discusses the River as a deity." Response at 8.  Plaintiffs have cited to portions of the record that indicate: (i) "Aluminum and dissolved lead ... continue to exceed [NNEPA standards for] aquatic and wildlife chronic criteria in the years after 2015;" (ii) "high-flow events in 2019 carried larger concentrations of metals through the lower Animas River and into the San Juan river than were seen in pre-Spill data;" (iii) "The  Spring 2016 snowmelt caused '27 exceedances of NNEPA domestic water supply and primary and second human contact for total lead." Doc. 1549 at 9, filed April 4, 2022.

Weston has not met its initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact because it has not cited to portions of the record showing that the Release did not affect the water quality of the San Juan River after the 2015 growing season. Plaintiffs have cited portions of the record indicating that the Release impacted water quality in 2016 and 2019.

<u>Use of the San Juan River</u>

The Court grants Weston's request to dismiss the Allen Plaintiffs' claims "for noneconomic damages related to loss of use of, or harm to, the San Juan River."  Reply at 8, filed April 22, 2022. Weston contends:

> The *Allen* Plaintiffs cannot recover non-economic damages stemming from alleged harm to the San Juan River. Plaintiffs' AMFs are replete with references to the loss of use of the San Juan River. *See, e.g.,* Resp. at ¶¶ 2, 7, 8, 10, 12-13, 16-17, 19, 22-23, and 28. But the San Juan River is not real property belonging to any individual plaintiff. *See* 22 NAVAJO CODE § 1103 ("the Navajo Nation is the owner of the full equitable title to all of the waters of the Navajo Nation."); N.M. Const. art. XVI, § 2; NMSA 1978 § 72-1-1 (all natural watercourses in the State of New Mexico belong to the public). No *Allen* Plaintiff has a property interest in the river.
>
> Consequently, the *Allen* Plaintiffs' claims for loss of use of the San Juan River for fishing (Resp. at ¶¶ 8, 16-17, 19, 23, and 28), swimming (Resp. at ¶¶ 12, 16-17,19, and 22-23), camping (Resp. at ¶ 17), or direct watering of livestock (Resp. at ¶¶ 13 and 22) are not based upon harm to their real property and therefore are not recoverable.

9

> Likewise, Plaintiffs' claims of disturbance and annoyance in the form of anxiety about the potential contamination of the river or spiritual harm to the deity of the San Juan River, no matter how genuinely held, are not recoverable as property damages because they do not have a property interest in the river itself.

Reply at 7-8.

> The *Allen* Plaintiffs argue that:
>
> Damages are available based on a change in the environment that annoys and disturbs religious activities. In *Baltimore & P. R. Co. v. Fifth Baptist Church*, 108 U.S. 317, 330 (1883), the Supreme Court affirmed annoyance and disturbance damages awarded to a church for its private nuisance claim based on excessive noise and smoke and from the defendant on an adjoining property; the defendant's noise was so loud that it disrupted the members' religious activities. *Id.* at 319. The Supreme Court found that the church "was entitled to recover because of the inconvenience and discomfort caused to the congregation assembled." *Id.* at 330.

Response at 39.  The United States Supreme Court stated that the rule regarding liability for annoyance and discomfort that applies to individuals also applies to corporations and that *the church* "was entitled to recover because of the inconvenience and discomfort caused to the congregation." *Baltimore & P.R. Co. v. Fifth Baptist Church*, 108 U.S. 317, 330, 335 (1883).  The decision by the United States Supreme Court in 1883 did not state that the individual church members were entitled to recover for annoyance and discomfort.  The *Allen* Plaintiffs have not cited any Colorado law which would allow the *Allen* Plaintiffs to recover damages for annoyance and discomfort arising from Plaintiffs' loss of use of real property that is not owned by the *Allen* Plaintiffs.  *See* Response at 39-40.

The Court dismisses the *Allen* Plaintiffs' claims for noneconomic damages related to loss of use of, or harm to, the San Juan River.  "Damages available on trespass and nuisance claims can include not only diminution of market value or costs of restoration and loss of use of the property, but also discomfort and annoyance *to the property owner as the occupant*." *Webster v. Boone*, 992 P.2d 1183, 1185-1187 (Colo. App. 1999) (emphasis added).

**IT IS ORDERED** that Weston Solutions, Inc.'s Motion for Partial Summary Judgment to Dismiss the *Allen* Plaintiffs' and *McDaniel* Plaintiffs' Claims for Noneconomic Damages, Doc. 1475, filed March 7, 2022, is **GRANTED in part and DENIED in part** as follows:

(i) The Court dismisses the *Allen* Plaintiffs' and *McDaniel* Plaintiffs' claims for emotional distress.

(ii) The Court denies Weston's request to dismiss the *Allen* Plaintiffs' and *McDaniel* Plaintiffs' claims for annoyance and discomfort damages.

(iii) The Court denies Weston's request to dismiss the *Allen* Plaintiffs' and *McDaniel* Plaintiffs' claims for annoyance and discomfort damages arising after the 2015 growing season.

(iv) The Court dismisses the *Allen* Plaintiffs' claims for noneconomic damages related to loss of use of, or harm to, the San Juan River.

_____
**WILLIAM P. JOHNSON**
**CHIEF UNITED STATES DISTRICT JUDGE**