IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

IN RE: GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO,No. 1:18-md-02824-WJ
ON AUGUST 5, 2015

*This Document Relates to:*No. 17-cv-710-WJ-SCY

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART UNITED STATES' MOTION TO EXCLUDE EXPERT
## TESTIMONY OF *McDANIEL* PLAINTIFFS' EXPERT LELA HOLMES

The *McDaniel* Plaintiffs, who own properties near the Animas River, retained Lela Holmes to present "expert testimony to support their claims for diminution of property value allegedly resulting from stigma associated with environmental issues from the Gold King Mine release on August 5, 2015." United States' Motion to Exclude the Expert Testimony of Lela Holmes at 5, Doc. 1624, filed April 27, 2022. "Ms. Holmes is a licensed realtor" and "has been a realtor in San Juan County New Mexico ... for 46 years. She possesses a wealth of local knowledge about her local market." Motion at 6; *McDaniel* Plaintiffs' Response at 11, Doc. 1664, filed June 16, 2022.

Ms. Holmes issued a Broker's Opinion of Value ("BOV") for six different properties:

These six BOVs, along with supporting documents consisting of pictures and San Juan County tax records, comprise the entirety of Ms. Holmes's expert report. *Id.* Each of the six BOVs is only a single page in length. *Id.* at 1–6. Each BOV consists of a brief description of the property, along with a materially identical version of the following opinions:

> Lot is likely no longer [the original acreage] as when the Gold King Mine Spill came down the river all of the river bank vegetation was destroyed and when the next rains came some of the property was washed into the river thereby creating new river banks and decreasing the size of the land.
>
> Value of the property would be [$X].
>
> A Realtor or Owner marketing the property would be required to disclose to that [sic] there could be environmental issues from the Gold King Mine Spill.
>
> After the legally required disclosure of the Gold King Mine Spill the property value can be expected to decrease by 75% to 90%.

*Id.*

Motion at 6-7.

The United States seeks to exclude Ms. Holmes' testimony because:

(i) "Ms. Holmes' expert report failed to include any basis or reasons for her opinions as required by Federal Rule of Civil Procedure 26(a)(2)(B)."

(ii) Ms. Holmes "fail[ed] to perform interior inspections for the subject properties" and "fail[e]d to consider any facts and data related to the environmental contamination that she claims will result in a 75% to 90% reduction in value for all six of the properties she evaluated."

(iii) Ms. Holmes "failed to keep track of information that she relied upon in reaching her opinions," "cannot recall how she reached her opinions," "could not even remember what kind of principles and methods she used to reach certain opinions," and "can no longer replicate her analysis."

(iv) Ms. Holmes "erroneously evaluated a property that has no connection to this litigation, and also mistakenly assumed that all six properties were riverfront properties."

Motion at 5-6.

The Court does not address the United States' argument that Ms. Holmes' opinions should be excluded for failure to comply with the disclosure requirements of Fed. R. Civ. P. 26(a)(2)(b), or the *McDaniel* Plaintiffs' response that the deficits in Plaintiffs' expert disclosures are not prejudicial to the United States, because the Court excludes Ms. Holmes' opinions regarding the decrease in the *McDaniel* Plaintiffs' property values due to the Gold King Mine Release because they will not be helpful to the jury.

None of the Parties have requested that the Court set a *Daubert* hearing prior to ruling on this Motion.

**Admission of Expert Testimony Under Rule 702**

Rule 702, which governs testimony by expert witnesses, provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Federal Rule of Evidence 702 requires the district court to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786. Under Rule 702, the court must first decide whether the proffered expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. *See* Fed. R. Evid. 702. Then "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

*Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019).

**Expert Qualifications**

To perform its gatekeeping function, the Court generally takes two steps. First, it determines whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. *See* Fed. R. Evid. 702. The second step is to decide whether the expert's opinions are sufficiently reliable. *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (*en banc*).

The United States challenged Ms. Holmes' expert qualifications stating:

> Ms. Holmes's "expertise" in this case is almost entirely based on her experience as a realtor in New Mexico. *See generally, id.* at 7. Ms. Holmes has no degrees, and her relevant education primarily consists of the continuing education courses required to maintain her status as a licensed realtor. Ms. Holmes's experience in the field consists of (1) representing buyers and sellers in real estate transactions, and (2) issuing Broker's Opinions of Value (BOV) for banks and other companies. *Id*.
>
> Although Ms. Holmes has many years of experience as a realtor, very little of that experience involved the kinds of property at issue here. Ms. Holmes testified that she does not "have a lot of experience selling riverfront property." Ex. B at 209:25–210:1 (Deposition of Lela Holmes).[2] Similarly, Ms. Holmes testified that she would not be comfortable marketing any of the Plaintiffs' properties because "they are rural properties," "rural property is a totally different market," and Ms. Holmes markets "very little rural property." *Id.* at 309:25, 358:14–20.
>
> Of particular significance here, Ms. Holmes has no experience with assessing diminution in value resulting from environmental contamination. *Id.* at 41:24–42:2. In fact, Ms. Holmes has no experience at all dealing with properties potentially impacted by environmental contamination. *Id.* at 350:2–352:8. Ms. Holmes's only experience within the broad category of environmental issues is limited to properties that had illegal septic systems. *Id.* at 329:20–330:1, 350:2–352:8.

Motion at 7 (n.2 states: "At deposition, Ms. Holmes could only recall selling two riverfront properties in her entire career, one of which was a vacant tract of land. *Id.* at 209:10-24.").

> The *McDaniel* Plaintiffs responded stating:
>
> Lela Holmes is realtor licensed by the New Mexico Real Estate Commission to list, evaluate, and sell property, and to provide broker's professional opinions of value (BPOV). **Ex. 1**, p. 229:2-11. She followed her professional criteria to provide the subject BPOVs. **Ex. 1**, pp. 366:25 to 367:2. Ms. Holmes has worked with state regulatory agencies to develop standards in the field of real estate. **Ex. 1**, pp. 241:25 to 242:3.
>
> Ms. Holmes does not perform the appraisal function of advising lenders; her expertise is in evaluating properties for the amounts they could actually be marketed to prospective buyers. **Ex. 1**, pp.229:19 to 230:16. She does not need an appraiser's license to perform a BPOV. **Ex. 1**, pp. 232:21 to 233:4; p. 237:14-17; p. 239:19-21; p. 240:14-17; p. 269:11-13. She does not need an advanced college degree, specialized scientific knowledge in soils or hydrology, a legal education, an attorney, or a licensed surveyor to perform a BPOV. **Ex. 1**, pp. 235:23 to 237:4; p. 356:15-22; p. 359:20-22; p. 360:2-5. There is no law, regulation, or ordinance that prevents a realtor from providing a BPOV. **Ex.1**, p. 356:3-6. **Ex. 1**, A property can be sold without a formal appraisal. **Ex. 1**, p. 239:16-18. The principles of assessing diminution of property value have not changed substantially over her 46 year career. **Ex. 1**, pp. 238:16 to 239:6.

4

> Ms. Holmes is qualified to perform BPOVs for customers seeking comparative values for properties. **Ex. 1**, p. 237: 6-9. She has performed hundreds of these analyses over the course of her career. Ex. 1, p. 288:4-7. No court or entity has ever refused Ms. Holmes' expert testimony, challenged her methodology, or told her that the methodology she used to develop BPOVs is invalid. **Ex. 1**, p.239:11-15; p. 250:16-19; p. 251:13-20; pp. 286:25 to 287:11; p. 288:8-14; p. 356:7-13.

Response at 18-19. The United States' Reply does not address any of the statements in the *McDaniel* Plaintiffs' Response that support Ms. Holmes' qualifications. *See* Doc. 1734, filed July 21, 2022.

The Court finds that Ms. Holmes is qualified by knowledge and 46 years of experience as a realtor in San Juan County to testify regarding property value.

**Opinion Reliability**

The Court grants in part the United States' Motion to exclude Ms. Holmes' testimony regarding decreases in value of the *McDaniel* Plaintiffs' properties due to the Gold King Mine Release. The Court denies the United States' Motion to the extent that it seeks exclude Ms. Holmes' general testimony regarding factors that can affect property values.

Ms. Holmes' report states the property values can be expected to decrease by 75 to 90% after disclosure of the Gold King Mine Release. *See* Doc. 1624-1, filed April 27, 2022. Ms. Holmes' report does not contain "the basis and reasons for" her opinions or "the facts or data" she considered in forming her opinions as required by Rule 26(a)(2)(B). At her deposition, Ms. Holmes, who is 86 years old, testified that she did not know if she ever heard the term "expert witness," she was "asked to do a market evaluation," and she "was never told that I would be an expert witness." Doc. 1624-2 at 37. When asked how she arrived at the 75-90% decrease in value, Ms. Holmes stated: "I'm afraid I can't answer that because it's just been too far in the distance." Doc. 1624-2 at 10. Ms. Holmes stated that her opinion was based partially on a comparable sales analysis that she performed but that she does not have a record of what properties

5

she identified as potential comparables, "couldn't even find comparables for some of them," and "doubt[ed] she would be able to re-create the comparable sales analysis that she performed for this case "because of the time that has gone by." Doc. 1624-2 at 8-9, 25. Ms. Holmes did not review any materials regarding environmental issues at the *McDaniel* Plaintiffs' properties due to the Gold King Mine Release. *See* Doc. 1642-2 at 36.

The *McDaniel* Plaintiffs state: "Ms. Holmes fully described her methodology in Plaintiffs' Exhibit 2: Lela Holmes' Methodology." Response at 25. "Plaintiffs' Exhibit 2: Lela Holmes' Methodology" is two pages of excerpts from Ms. Holmes' deposition in which she discusses in general terms the methodology she goes through when developing a broker's professional opinion. *See* Doc. 1664-2 at 2-3. "Plaintiffs' Exhibit 2: Lela Holmes' Methodology" indicates that she applied that methodology when developing the broker's professional opinions for this case, but does not specifically describe the information she considered for each property. *See* Doc. 1664-2 at 2-3.

The Court excludes Ms. Holmes' opinions regarding the decrease in value of the *McDaniel* Plaintiffs' properties due to the Gold King Mine Release. Rule 702 requires that an expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" and the "testimony is based on sufficient facts or data." Fed. R. Evid. 702(a-b).

> An expert must base her opinion on at least the amount of data that a reliable methodology demands ... The expert may properly base her opinion on something less than all the pertinent facts or data. Thus ... sufficiency is a function of the nature and scope of the opinion offered, the quantity of data both available and pertinent to the issue at hand, and what is deemed sufficient by experts in the pertinent field when working outside the courtroom.

Charles Alan Wright & Arthur R. Miller, 29 Fed. Prac. & Proc. Evid. § 6268. The Court finds that Ms. Holmes' testimony that the value of the *McDaniel* Plaintiffs' properties would decrease after disclosure of the Gold King Mine Release will not be helpful to the jury because: (i) Ms. Holmes

did not retain and did not remember the specific data she considered when preparing her opinion; (ii) Ms. Holmes did not review any materials regarding environmental issues at the *McDaniel* Plaintiffs' properties due to the Gold King Mine Release; (iii) Ms. Holmes does not remember how she arrived at the 75-90% decrease in value; and (iv) Ms. Holmes cannot replicate her analyses.

The Court does not exclude Ms. Holmes' general opinions regarding factors that affect a property's value. Ms. Holmes testified that stigma and other factors can affect the value of a property. *See* Doc. 1664-1 at 10-16. Ms. Holmes is qualified by knowledge and her 46 years of experience as a realtor in San Juan County to testify generally regarding factors affecting property value. Ms. Holmes' testimony regarding factors such as stigma that affect property values will be helpful because it involves specialized real estate knowledge that most untrained laypersons are not familiar with.

> Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Ladd, Expert testimony, 5 Vand.L.Rev. 414, 418 (1952).

Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules.

**IT IS ORDERED** that the United States' Motion to Exclude the Expert Testimony of Lela Holmes, Doc. 1624, filed April 27, 2022, is **GRANTED in part** as follows:

(i) The Court grants the United States' Motion to exclude Ms. Holmes' testimony regarding the decreases in value of the *McDaniel* Plaintiffs' properties due to the Gold King Mine Release.

(ii) The Court denies the United States' Motion to exclude Ms. Holmes' testimony regarding regarding factors that can affect property values.

_____
**WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE**